USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED:  March 25, 2021

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**KAREEM BROWN,**

                                        **Plaintiff,**

                 **-against-**

**MONTEFIORE MEDICAL CENTER,**

                                        **Defendant.**

---

**19 CV 11474 (ALC)**

**<u>MEMORANDUM AND ORDER</u>**

**ANDREW L. CARTER, JR., District Judge:**

Plaintiff, Kareem Brown, brings this action pursuant to 42 U.S.C. § 1981, alleging racial discrimination, hostile work environment, and retaliation. Plaintiff further alleges twelve other state and local related causes of action. Pending before the Court is Defendant's motion to dismiss the complaint. (ECF No. 10.) For the reasons that follow, Defendant's motion to dismiss is GRANTED in part and DENIED in part.

**Factual Background**

The following allegations are derived from Plaintiff's complaint. (Compl., ECF No. 1). Plaintiff, an African American man, was employed by Montefiore Medical Center for 17 years. In 2015, Plaintiff was promoted to Chief Technologist in the Radiology Department, which Plaintiff credits as the reason his problems began. *Id.* at ¶ 20. As Chief Technologist, Plaintiff supervised approximately twenty-three staff members, including Laima Masone and John O'Donnell, who Plaintiff alleges harassed and discriminated against him because he was a Black man. *Id.* at ¶ 21.

Plaintiff alleges that Montefiore's management, human resources, and labor relations, discriminated, retaliated, and harassed Plaintiff by failing to enforce Montefiore's policies and

procedures. Compl. At ¶ 22. Montefiore was on notice of the harassment, but instead permitted Plaintiff's white male and female subordinates to harass, discriminate, and retaliate against him. *Id.* at ¶ 23.

### A.  Incidents with Ms. Masone and Mr. O'Donnell

Ms. Masone and Mr. O'Donnell, a white woman and white man, were two of Plaintiff's subordinates who harassed, discriminated, and retaliated against Plaintiff because he is a Black man. Compl.  ¶¶ 24–26. While Plaintiff alleges that Mr. O'Donnell discriminated against him, the bulk of Plaintiff's allegations focus on Ms. Masone.

Plaintiff alleges several incidents regarding Ms. Masone. On April 6, 2016, Ms. Masone raised her voice at Plaintiff; on April 11, 2016, Ms. Masone violated Montefiore's policies due to inappropriate behavior, unsatisfactory work performance, and insubordination; on May 6, 2016, Ms. Masone was rude and disrespectful to Plaintiff as he tried to review her performance evaluation with her; on November 28, 2016, Ms. Masone wrongly accused Plaintiff of not understanding a "HIPPA" [*sic*] regulation; on November 29, 2016, Ms. Masone sent Plaintiff an email in all capital letters, stating that she was going to seek legal advice; on April 25, 2017, Ms. Masone ignored Plaintiff's request that she adhere to Montefiore's policy that an employee who has not had a flu shot wear a mask when coming into contact with patients and instead sent an unprofessional email in response; on July 10, 2017, Plaintiff emailed Ms. Masone about her failure to follow his instructions; on October 30, 2017 and January 19, 2018, Ms. Masone and Mr. O'Donnell made false discriminatory allegations regarding Plaintiff; in May of 2018, Ms. Masone disregarded Plaintiff's instructions; on August 23, 2018, Ms. Masone made a rude comment to Plaintiff, stating "you're not my father;" and on October 11, 2018, Ms. Masone refused to follow Plaintiff's directive. *Id.* Additionally, Plaintiff alleges that Ms. Masone discriminated against and

harassed Plaintiff by complaining to her union. *Id.* at ¶ 139.Compl. At ¶¶ 27, 41, 42, 49, 51, 53, 55, 57, 58, 67, 83–84, 99,113, 124, 139, 159, 176–178.

### B. *Plaintiff's Attempt to Remedy Behavior Problems*

Plaintiff then alleges the steps he took to address Ms. Masone's behavior. After the April 26, 2016 incident, Plaintiff informed Teresa Mandarino, the most senior administer of daily operations. That same day, Plaintiff met with Ms. Mandarino, Ms. Masone, and her union delegate, Maurice De Palo. Masone received counseling. Compl. at ¶¶ 29–31. Afterwards, Plaintiff spoke with Mr. De Palo privately, and he informed Plaintiff that Ms. Masone was racist. *Id.* at ¶ 33.

After the May 6, 2016 incident, Plaintiff met with Ms. Masone and her union representative. Ms. Masone received a verbal warning. *Id.* at ¶ 48. After the November 28 and 29 incidents, Plaintiff called Ms. Mandarino to confirm the policy that Ms. Masone questioned him about. *Id.* at ¶ 52. After the April 25, 2017 incident, Plaintiff complained about Ms. Masone's behavior, and he, Ms. Masone, Ms. Masone's union representative, Gladys Wrenick, and Ms. Mandarino met to discuss Ms. Masone's behavior. *Id.* at ¶ 58.

### C. *Montefiore and the Union's Response*

Plaintiff alleges that Montefiore left Plaintiff to work in an environment of hostility, discrimination, and retaliation; failed to remedy the situation with Ms. Masone and Mr. O'Donnell; and protected Ms. Masone and influenced Mr. O'Donnell to also target Plaintiff because he is Black. Plaintiff further alleges that Montefiore was aware of the discrimination. Compl.  ¶¶ 89-93, 151. Plaintiff states that Montefiore took no action against Ms. Masone or Mr. O'Donnell for their behavior. *Id.* at ¶¶ 133–137. Plaintiff alleges that this behavior from Ms. Masone and lack of response from Montefiore demonstrates institutionalized racism and sexism against Plaintiff. *Id*

On August 17, 2017, Plaintiff states that it became apparent that Montefiore and the Union knew of Ms. Masone's racism when he attended a meeting about another employee. Compl. At ¶ 66. Plaintiff describes an incident where he introduced himself and the attendees of the meeting began to laugh. *Id.* at ¶¶ 67–68. After the meeting, Plaintiff was told by Estella Vazquez that Ms. Masone's issues were rooted in being supervised by a Black man or person of color for the first time. *Id.* at ¶ 69. That evening, Plaintiff received a call from Melanie Danisi, radiology administrator, who informed Plaintiff that Ms. Masone had alleged that Plaintiff was using his size to intimidate her. *Id.* at ¶ 70. Ms. Danisi told Plaintiff to "be careful" and that he should inform Montefiore's Labor Relations about Ms. Masone's problem with having a Black supervisor. *Id.* at ¶¶ 70—73.

On August 18, 2017, Plaintiff spoke with Labor Relation's Todd Austin and informed him of Mr. De Palo and Ms. Vazquez's allegations of racism regarding Ms. Masone. *Id.* at ¶ 74. Plaintiff would subsequently write a letter to Mr. Austin about Ms. Masone's racism. *Id.* at ¶ 78. Over the next few months, Plaintiff and Ms. Masone continued to have issues, and Plaintiff learned that Ms. Masone had made false allegations that Plaintiff yelled and screamed at her. *Id.* at ¶¶ 78–84.

On November 15, 2017, Plaintiff followed up with Labor Relations regarding his letter he wrote about Ms. Masone. Compl. At ¶ 85. Mr. Austin stated that "we have not received a response. At this point I do not expect one. Is there a current concern you have?" *Id.* at ¶ 86. From this correspondence, Plaintiff alleges that it is clear that Montefiore treated Ms. Masone, a white woman, more favorably than Plaintiff because he is a Black man. *Id.* at ¶ 88. To support this, Plaintiff states that it was acknowledged in his performance evaluation that he has to deal with

difficult employees, and Ms. Masone and Mr. O'Donnell's names were left out of the evaluation despite documented racial animus. *Id.* at ¶¶ 94–96.

On January 19, 2018, Plaintiff met with Labor relations, the Union, and Ms. Masone to discuss Ms. Masone's attempt to bypass Plaintiff by seeking approval from another manager for a day off. Compl. at ¶¶ 98–99. Plaintiff alleges that Ms. Masone again made false allegations that he yelled and screamed at her, and she claimed that she was afraid that Plaintiff would hit her. *Id.* at ¶¶ 100–101. Ms. Masone was then told to follow the chain of command at the conclusion of the meeting. *Id.*at ¶ 103.

Plaintiff next describes a series of events that stemmed from a May 2018 incident with Ms. Masone where she disregarded his instructions. Compl. ¶ 113. From this event, Plaintiff updated human resources on the history of Ms. Masone's conduct. *Id.* at ¶¶ 114–117. On June 11, 2018, Ms. Masone failed to show up for a schedule meeting to address the incident, and Montefiore approved her written warning. *Id.*at ¶ 118. However, the day after Ms. Masone's written warning, Plaintiff alleges that Montefiore punished him for engaging in protected activity when he was informed that he had to attend an Emotional Intelligence course. *Id.*at ¶ 121. Plaintiff would attend the course on October 31, 2018. *Id.* at ¶ 140

Then, on August 17, 2018, Plaintiff requested that Ms. Masone be suspended for violating another Montefiore policy. Compl. at ¶ 123. Montefiore did not take disciplinary action against Ms. Masone for the violation. On August 23, 2018, Plaintiff, Ms. Mandarino, and Ms. Masone met to discuss Ms. Masone's conduct and during that conversation Ms. Masone stated, "you're not my father." *Id.* at ¶ 124. Ms. Mandarino responded that Ms. Masone should show Plaintiff some respect. *Id.*at ¶ 126. .

On November 2, 2018, Plaintiff followed up with HR regarding his request that Ms. Masone be suspended, but was informed that the Labor Relations Manager wanted to speak with him first. *Id.* at ¶¶ 141–142. Plaintiff would then speak to Georgia Colquhoun-Pryce, Labor and Employee Relations Manager, who informed Plaintiff that he was being investigated for allegations of reverse racism put forth by Ms. Masone and Mr. O'Donnell.

Plaintiff next describes a pattern of complaints from Plaintiff, and Montefiore's failure to investigate Plaintiff's complaints or false allegations from Ms. Masone or Mr. O'Donnell. *Id.* at ¶¶ 143–166.

Eventually Plaintiff recommended that Ms. Masone be terminated and submitted the necessary paperwork. *Id.* at ¶ 167. Plaintiff then received a call from Labor Relations that Ms. Masone would receive a one-day suspension for her most recent conduct in a meeting with Plaintiff in November 2018. *Id.* at ¶ 168.

On March 5, 2019, Plaintiff asked for an update on the status of any investigation into Ms. Masone and Mr. O'Donnell's allegations against Plaintiff for reverse racism. *Id.* at ¶ 182. Ms. Emmons of HR admitted on tape that Montefiore had failed to conduct an investigation. *Id.* at ¶ 183.

### D.  Plaintiff's Allegations of Constructive Discharge

Plaintiff went on vacation from July 3, 2019 to July 14, 2019. Compl. at ¶ 219. Plaintiff returned to work on July 15 but left and went to urgent care on July 16 because he was experiencing chest pains. *Id.*at ¶ 220. On July 17, 2019, Plaintiff took a sick day, and on July 26, 2019, Plaintiff went on medical leave. *Id.* at ¶¶ 221–222. On September 12, 2019, Plaintiff received a note from his doctor stating that returning to work would be detrimental to Plaintiff's health because of the ongoing racial discrimination. *Id.* at ¶ 223. Plaintiff's attorney then sought an update from

Montefiore's in-house counsel on any action taken on Plaintiff's various complaints, as Plaintiff was supposed to return to work on September 18, 2019. *Id.* at ¶ 224. It was in-house counsel's position that Montefiore had not engaged in any unlawful conduct with respect to Plaintiff. *Id.* at ¶ 226. Then, Plaintiff's attorney emailed in-house counsel that Plaintiff had been constructively discharged. *Id.* at ¶ 228.

## PROCEDURAL HISTORY

Plaintiff commenced this action on December 16, 2019. (ECF No. 1), alleging racial discrimination, hostile work environment, and retaliation, in violation of 42 U.S.C. § 1981. Plaintiff further alleges twelve other state law related causes of action. *Id.* Plaintiff moved to dismiss this action on May 22, 2020, and Plaintiff opposed the motion on June 19, 2020. (ECF Nos. 10, 13.) Defendant replied on July 1, 2020 (ECF No. 15), and the Court considers the motion fully briefed.

## DISCUSSION

### I.        Standard of Review

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully," and accordingly, where the plaintiff alleges facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line

between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss, the court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *See Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008). However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *see also id.* at 681. Instead, the complaint must provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555). In addition to the factual allegations in the complaint, the court also may consider "the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (citation and internal quotation marks omitted).

Defendant argues that Plaintiff has failed to state a plausible claim of constructive discharge; discrimination, hostile work environment, or retaliation under § 1981 or the NYSHRL/NYCHRL; Additionally, Defendant argues that Plaintiff has failed to state a claim for intentional or negligent infliction of emotional distress. *See generally* Def.'s Mem. of Law. The Court addresses these arguments only to the extent necessary to decide the instant Motion.

## I.    Section 1981 Claims

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens. . . ." 42 U.S.C. § 1981(a). Section 1981 thus prohibits racial discrimination "with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as

employment." *Calvelos v. City of New York*, No. 19 CV 6629, 2020 WL 3414886, *9 (S.D.N.Y. June 22, 2020) (citation omitted). Accordingly, as with Title VII and § 1983 claims, a § 1981 plaintiff may allege that discrimination occurred in the form of discrete adverse employment actions, as well as by means of conduct creating a "hostile work environment." *See Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) (discussing the similarities and differences between Title VII, § 1981, and § 1983). Although § 1981 does not itself "specifically authorize[ ] private lawsuits to enforce" its prohibitions, the Supreme Court has "created a judicially implied private right of action." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1015 (2020).

To establish a claim under § 1981, a Plaintiffs must allege facts supporting the following elements: (1) Plaintiff is a  member of a racial minority; (2) Defendant intends to discriminate on the basis of race; and (3) discrimination concerning one of the statute's enumerated activities (i.e., the right to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens). 42 U.S.C. § 1981; *see Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 7 F.3d 1085, 1087 (2d Cir. 1993). "A plaintiff alleging racial . . . discrimination . . . must do more than recite conclusory assertions. In order to survive a motion to dismiss, the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994). Additionally, the Supreme Court has recently held that to prevail on a § 1981 claim, "a plaintiff must initially plead and ultimately prove that, but for race, [he] would not have suffered the loss of a legally protected right." *Comcast Corp.*, 140 S. Ct. at 1019 (2020). Accordingly, it is

insufficient to merely plead that race was a motivating factor in the discriminatory action. *Id.* at 1017–18.

### A. Racial Discrimination based on Adverse Employment Actions under 42 U.S.C. § 1981

Here, Plaintiff alleges four adverse employment actions. Plaintiff first alleges that his allegations cumulatively support that his work environment was so intolerable to constitute an adverse employment action; second, Plaintiff alleges that Defendant requiring him to attend an Emotional Intelligence course for complaining of discrimination was an adverse employment action when Masone or O'Donnell were not required to take the same class; third Plaintiff alleges that Montefiore stripped him of material duties as Chief Technologist; and fourth, Plaintiff alleges that his constructive discharge was an adverse employment action. The Court shall address each adverse employment action in turn.

*Constructive Discharge*

Plaintiff's first and fourth adverse employment allegations are correctly addressed together, as Plaintiff is alleging that his work atmosphere was so intolerable as to constitute a constructive discharge. The Court disagrees. Plaintiff has failed to plausibly allege that he was constructively discharged.

Under Section 1981 "an employee is constructively discharged when his employer, rather than discharging him directly, intentionally creates a work atmosphere so intolerable that he is forced to quit involuntarily." *Petrosino v. Bell Atl.*, 385 F. 3d at 229. Courts typically break constructive discharge claims into two parts: "the employer's intentional conduct and the intolerable level of the work conditions." *Petrosino*, 385 F.3d at 229. Regarding the first part, the employer must intend to create "intolerable workplace conditions." *Whidbee v. Garzarelli Food*

*Specialties, Inc.*, 223 F.3d 62, 74 (2d Cir. 2000). "The second part of a constructive discharge claim requires the plaintiff to prove that an objectively reasonable person in the plaintiff's position would find her 'work conditions so intolerable as to compel resignation.'" *McCalla v. City of N.Y.*, 15 Civ. 8002, 2017 WL 3601182, at *68 (S.D.N.Y. Aug. 14, 2017) (quoting *Petrosino*, 385 F.3d at 230). This is a demanding standard, because "[c]onstructive discharge cases 'present a worse case harassment scenario, harassment ratcheted up to the breaking point.'" *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 301 (S.D.N.Y. 2011) (quoting *Pa. State Police v. Suders*, 542 U.S. 129, 147–48 (2004)).

Here, fatal to Plaintiff's claim is that nowhere in his complaint has Plaintiff plausibly alleged that Montefiore intentionally or deliberately created negative working conditions, because of Plaintiff's race, so as to compel him to resign. *See Gonzalez v. New York City Health and Hosp. Corp.*, 18 Civ. 2645, 2019 WL 2435622, at *9 (S.D.N.Y. June 11, 2019) (dismissing Plaintiff's complaint of constructive discharge under the federal law, the NYSHRL, and the NYCHRL because it "contains no specific allegation that [the company] or its supervisors acted deliberately in a way that would enable the Court to infer the intent to create an intolerable work environment for [the plaintiff]"); *see also Spires v. MetLife Grp., Inc.*, No. 18 Civ. 4464, 2019 WL 4464393, at *10 (S.D.N.Y. Sept. 18, 2019) (same). In fact, Plaintiff alleges a pattern of Montefiore or the Union meeting with Plaintiff and Masone on at least four separate occasions to discuss Plaintiff's concerns and Masone's behavior. Compl. ¶¶ ¶¶ 29–31, 48, 98–99, 124–126. Additionally, Plaintiff's allegations that Montefiore took no steps to remedy the situation with Masone and thus left him to work in an intolerable environment are defeated by allegations in the complaint. Ms. Masone received a written warning, counseling, was told to follow the chain of the command, and eventually received a one-day suspension. *Id.* at ¶¶ 29–31, 103, 118, 168. While Plaintiff alleges

that Montefiore knew of Masone's behavior, in light of the allegations in the complaint, this is insufficient for the Court to infer that Montefiore intended to create an intolerable work environment for Plaintiff. Therefore, Plaintiff has failed to state a claim for constructive discharge.

*Emotional Intelligence Course*

Next Plaintiff alleges that Montefiore requiring him to attend an Emotional Intelligence course was an adverse employment action as Masone and O'Donnell were not required to attend the same course. Plaintiff fails to adequately allege disparate treatment between himself and Masone and O'Donnell as Plaintiff is not similarly situated to Masone and O'Donnell.

To show disparate treatment, "the individuals with whom [the plaintiff] attempts to compare herself must be similarly situated in all material respects." *See Bush v. Fordham Univ.*, 452 F. Supp. 2d 394, 410 (S.D.N.Y. 2006) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)); *see also O'Neal v. State Univ. of N.Y.*, No. 01 CV 7802, 2006 WL 3246935, at *11 (E.D.N.Y. Nov. 8, 2006) (holding that the focus should be on "employees that have similar qualifications, display similar disciplinary records[,] or committed similar insubordinate acts"). Here, Plaintiff and Masone and O'Donnell were not similarly situated. First, as Plaintiff acknowledges, he was Masone and O'Donnell's supervisor and they were his subordinates. Additionally, Plaintiff held a different job from Masone and O'Donnell. Plaintiff was a Chief Technologist, Masone was an Ultrasound Technologist, and O'Donnell was a CT Technologist. *See Simpson v. Metro-North Commuter R.R.,* No. 04 Civ. 2565, 2006 WL 2056366, at *7 (S.D.N.Y. July 20, 2006) (citing *DeJesus v. Starr Technical Risks Agency, Inc.*, No. 03 Civ. 1298, 2004 WL 2181403, at *9 (S.D.N.Y. Sept. 27, 2004)) ("to be 'similarly situated,' employees must be substantially similar as to specific work duties, education, seniority, and performance history[]"); *see also Jenkins v. N.Y.C. Transit Auth.*, 201 F. App'x 44, 46 (2d Cir. 2006)

(dismissing a § 1981 claim because "no similarly situated white employee received more favorable treatment"); *Colon v. Fashion Inst. of Tech.*, 983 F. Supp. 2d 277, 289 (S.D.N.Y. 2013) (explaining that a plaintiff's "co-workers with whom she compares herself were not similarly situated, and therefore were not adequate comparators to show disparate treatment"). Accordingly, as Plaintiff is not similarly situated with Masone or O'Donnell, Plaintiff has failed to allege that Montefiore requiring him to take an Emotional Intelligence course was an adverse employment action.

*Changed Duties*

Next, Plaintiff raises for the first time that Montefiore stripped material duties from him as Chief Technologist. Pl.'s Mem. of Law at 18. Plaintiff alleges that the loss of duties was more disruptive than a mere inconvenience. *Id.* The Court notes that Plaintiff is represented by counsel in this matter and thus "is not entitled to any of the latitude afforded to *pro se* litigants in adjudicating a motion to dismiss." *Harty v. Nyack Motor Hotel, Inc.*, 2020 WL 1140783, at *3 (S.D.N.Y. Mar. 9, 2020) (emphasis added). Indeed, "counseled plaintiffs may not 'use their opposition to [a] motion to dismiss to raise new claims or arguments.'" *Id.* (quoting *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 390 n.19 (S.D.N.Y. 2013)) (alteration in original). For these reasons, the Court declines to consider plaintiff's new, improper allegations raised for the first time in opposition to Defendant's motion to dismiss. Therefore, Plaintiff has failed to plausibly allege adverse employment actions sufficient to demonstrate racial discrimination based on adverse employment action pursuant to Section 1981.

To the extent that Plaintiff alleges that there is evidence of intentional discrimination, that claim fails as well. Plaintiff fails to allege acts by Montefiore that, when accepted as true, give rise to an inference of intentional discrimination. Plaintiff states that Masone and O'Donnell's behavior toward him was due to him being a Black man; Montefiore's failure to remedy their behavior is

institutionalized racism; Montefiore classifying Masone and O'Donnell as problematic employees is evidence of race-based mistreatment; Montefiore was on notice of Masone and O'Donnell's behavior and chose not to investigate Plaintiff's claims of racism, and Montefiore investigated Plaintiff after Masone and O'Donnell alleged reverse racism, but failed to investigate Plaintiff's claims. The Court notes that that under § 1981, only intentional racial discrimination is prohibited. *Keesh v. Quick*, No. 19 Civ. 8942, 2021 WL 639530, at *5 (S.D.N.Y. Feb. 17, 2021); *see also Albert v. Carovano*, 851 F.2d 561 (2d Cir. 1988) ("Essential to an allegation under Section 1981 are allegations that the defendant's acts were purposefully discriminatory and racially motivated.") As the Court discussed *supra*, the allegations that Montefiore took no steps to remedy or address Masone's behavior are belied by the allegations in the complaint. Moreover, while Plaintiff alleges that Montefiore failed to investigate or respond to his claims of discrimination, that, too, is defeated by the record before the Court. Montefiore acknowledged in an email to Plaintiff's counsel that Montefiore spoke to Masone about Plaintiff's allegations of racism and they were denied. *See* Def.'s Ex. A.[1] Accordingly, the Court dismisses Plaintiff's Section 1981 racial discrimination claim. Racial discrimination under the NYSHRL is governed by the same standards that apply to Section 1981 claims. *See Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010). Therefore, the Court dismisses Plaintiff's racial discrimination claim under NYSHRL § 296.

Plaintiff also alleges a racial discrimination claim under the NYCHRL. The NYCHRL is to be construed more broadly than its state and federal counterparts, and claims under the

---

[1] Plaintiff attached as an exhibit to its complaint and opposition a partial email correspondence from Plaintiff's counsel to Montefiore's in-house counsel. Pl.'s Ex. 25. Defendant has attached the full email. Def.'s Ex. A. The Court finds this email incorporated by reference. "it is well established that on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court may also rely upon documents attached to the complaint as exhibits[ ] and documents incorporated by reference in the complaint." *Halebian v. Berv*, 644 F.3d 122, 131 n.7 (2d Cir. 2011) (internal quotation marks omitted)).

NYCHRL must be analyzed separately and independently. *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir.2013). When the court is called upon to construe the language of the NYCHRL, it is to construe the statute liberally with the federal and state statutes as a floor but not a ceiling. *See* The Local Civil Rights Restoration Act of 2005, N.Y.C. Local Law No. 85 (2005) ("The provisions of this [ ] title shall be construed liberally . . . ."). A district court is required to analyze a NYCHRL claim separately because the statute against which it is measured may be construed differently. *Mihalik*, 715 F.3d at 112.

Under the NYCHRL, Plaintiff must show that his employer treated him less well than other similarly situated employees, at least to some degree for discriminatory reasons. *Id.* at 110 n. 8. Because the Court has concluded that plaintiff has failed to allege any adverse employment actions that are connected to racial discrimination or any similarly situated employees, an analysis even under the less demanding standards of the NYCHRL would necessarily result in the dismissal of Plaintiff's claim. *See Wilson v. N.Y.P. Holdings, Inc.*, 05 CV 10355, 2009 WL 873206, at *29 (S.D.N.Y. Mar. 31, 2009) (finding that Plaintiff failed to establish that Defendant acted in a discriminatory manner and thus "no construction of the NYCHRL, no matter how broad, would compel a different result.") Plaintiff's federal, state, and city racial discrimination claims must be dismissed.

### B.  Gender Discrimination under NYSHRL and NYCHRL

Plaintiff brings a gender discrimination claim under NYSHRL § 296 and NYCHRL. The Court dismisses Plaintiff's gender discrimination claims as well. The analysis for gender discrimination claims under NYSHRL is generally identical to Title VII gender discrimination claims. *See Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 n. 9 (2d Cir. 2008) ("We typically treat Title VII and NYSHRL discrimination claims as analytically identical, applying the

same standard of proof to both claims."). The NYSHRL also provides for individual liability under two provisions. First, the NYSHRL provides, in relevant part, that "[it] shall be an unlawful discriminatory practice: . . . (a) [f]or an employer ... because of an individual's . . . sex . . . to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1)(a). An "employer" under this provision is someone who has "ownership interests in the [employer] or do[es] more than carry out personnel decisions of others." *Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 53 (2d Cir. 2014) (citation omitted) (first alteration in original, second alteration added).

Here, Plaintiff appears to allege gender animus on the basis that Ms. Masone received more favorable treatment. However, Plaintiff does not allege any facts to support this theory that it was because of his gender. Indeed, the only allegation that plaintiff puts forth is conclusory, that "Ms. Masone dedicated herself to attempting to destroy Mr. Brown's reputation and sabotaging his effectiveness as the Chief Technologist because of his race and gender." Thus, the Court cannot infer that Plaintiff was treated differently because of his gender. Plaintiff's Complaint wholly fails to allege that he was subject to any specific gender-based adverse employment action by Montefiore, nor does Plaintiff's complaint set forth any factual circumstances from which a gender-based motivation for such an action might be inferred. Additionally, Plaintiff's complaint fails to, for instance, allege that Defendant or even Masone made any remarks that could be viewed as reflecting discriminatory animus on the basis of gender. *See, e.g., Ostrowski v. Atl. Mut. Ins. Cos.,* 968 F.2d 171, 182 (2d Cir. 1992). Nor does the complaint allege that any similarly situated female employees were given preferential treatment when compared to Plaintiff. *See, e.g., Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

Therefore, Plaintiff's claim must be dismissed. *See Khaleel v. Swissport USA*, Inc., No. 15 CV 4880, 2015 WL 5307733, at *2 (E.D.N.Y. Sept. 10, 2015) (dismissing discrimination claim pursuant to Title VII because "[e]ven under the most liberal interpretation of [the plaintiff's] complaint, he provides no facts that could possibly connect or link any adverse employment action to a protected status"). Accordingly, Plaintiff's gender discrimination claim based on NYSHRL must be dismissed. *Erno v. New York State Off. of Info. Tech. Servs.*, No. 119 CV 1457, 2020 WL 2736563, at *7 (N.D.N.Y. May 26, 2020).

Likewise, Plaintiff's gender discrimination claim under NYCHRL is dismissed for the same reasons identified above. The Court heeds the Second Circuit's instruction to "analyze NYCHRL claims separately and independently from any federal and state law claims," *Mihalik*, 715 F.3d at 109, and to review such claims "more liberally" than their federal and state counterparts in order to "accomplish the law's uniquely broad purposes," *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009) (quoting *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 66–69 (1st Dep't 2009)). Unlike its federal and state counterparts, "the NYCHRL does not require that an employment action taken against a plaintiff be 'materially adverse' in order for the plaintiff to establish a *prima facie* case of discrimination." *Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 530 (S.D.N.Y. 2015); *see also Mihalik*, 715 F.3d at 114. Rather, under the NYCHRL, a plaintiff must show that she was treated "less well" at least in part because of her membership in a protected class. *See Mihalik*, 715 F.3d at 110 (citing *Williams*, 61 A.D.2d at 29). As with claims brought under Title VII and the NYSHRL, however, to establish a claim under the NYCHRL, a plaintiff must show that discrimination played a role in the employer's decision-making. *See Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 75–76 (2d Cir. 2015); *Philip v. Gtech Corp.*, No. 14 Civ. 9261,

2016 WL 3959729, at *10 (S.D.N.Y. July 20, 2016) (holding that the federal, state, and city "statutory standards as to causation are coterminous").

Even under this liberal pleading standard, Plaintiff's complaint lacks any specific allegations to establish gender discrimination under NYCHRL or that gender discrimination played any role in Montefiore's decision making. This claim must be dismissed.

### C.  Hostile Work Environment under 42 U.S.C. § 1981

Plaintiff alleges that Montefiore allowed white employees to harass him over a four-year period with such frequency and severity that their misconduct interfered with his work performance.

To state a claim of hostile work environment under § 1981, a plaintiff must plausibly allege that his "workplace was permeated with discriminatory intimidation, ridicule, and insult, that was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment." *Watkins v. N.Y.C Transit Auth.*, No. 16 Civ. 4161, 2020 WL 1888839, at *8 (S.D.N.Y. Apr. 16, 2020) (quotation marks and citation omitted); *see also Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 723–24 (2d Cir. 2010) (same). A plaintiff may satisfy this standard by "demonstrat[ing] either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2001) (quoting *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000)). Conduct that is "episodic" and not sufficiently "continuous and concerted" will not be deemed pervasive. *Littlejohn v. City of New York*, 795 F.3d 297, 321 (2d Cir. 2015) (citation omitted). Moreover, a plaintiff must establish that the defendants "create[d] such an environment because of the plaintiff's race." *Amaya v. Ballyshear LLC*, 295 F. Supp. 3d 204, 224 (E.D.N.Y. 2018) (citation, quotation

18

marks, and alterations omitted); *see also Colon*, 983 F. Supp. 2d at 292 (noting that a hostile work environment must have been created because of the plaintiff's "membership in a protected class"). In determining whether a plaintiff has plausibly alleged an actionable hostile environment, courts must look at the "totality of the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Littlejohn*, 795 F.3d at 321 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

Here, Plaintiff's hostile work environment claims survive the instant Motion for several reasons. First, the Court notes that whether "conduct is not severe or pervasive enough to successfully state a claim for hostile work environment under § 1981 . . . is a factual question that is generally inappropriate for the Court to determine on a motion to dismiss." *Amaya*, 295 F. Supp. 3d at 224; *see also Patane v. Clark*, 508 F.3d 106, 114 (2d Cir. 2007) (explaining that "whether a particular work environment is objectively hostile is necessarily a fact-intensive inquiry").

Second, while Plaintiff's Complaint alleges only circumstantial evidence of Masone and O'Donnell's racism—Plaintiff was told that Masone was racist by Maurice De Palo, Union Delegate, and that her harassment of him was rooted in her racist views by Estella Vazquez, VP of the Union— Plaintiff has alleged conduct beyond the circumstantial evidence that may have contributed to the hostile environment. For example, Plaintiff alleges that Masone and O'Donnell falsely accused him of reverse racism, and Plaintiff alleges pattern of behavior that may have contributed to a hostile work environment. Standing alone, these allegations do not suggest racially motivated harassment. However, when coupled with allegations that two Union representatives informed Plaintiff that the reason for Masone's behavior was because of racial antipathy, Plaintiff

is entitled to the inference that Masone's other offensive conduct was motivated, at least in part, by racial animus. *See Rasmy v. Marriott Int'l, Inc.*, 952 F.3d 379, 388 (2d Cir. 2020) ("Our case law is clear that when the same individuals engage in some harassment that is explicitly discriminatory and some that is not, the entire course of conduct is relevant to a hostile work environment claim.").

Additionally, it is clear that Montefiore attempted to respond to Masone's behavior and alleged harassment of Plaintiff; however, the Court is not in the position to assess the authenticity of Defendant's response on a motion to dismiss. Accordingly, Plaintiff's hostile work environment claim survives. As hostile work environment under NYSHRL is analyzed under the same standard, that claim survives as well. *See Adejare v. St. Charles Hosp. & Rehab. Ctr.*, No. 16 CV 805, 2017 WL 2559937, at *3 (E.D.N.Y. June 13, 2017); *Moore v. City of New York*, 15 CV 6600, 2017 WL 35450, at *22 (S.D.N.Y. Jan. 3, 2017 (internal quotation marks and citation omitted) (analyzing Title VII, ADA, Rehabilitation Act, § 1981, and NYSHRL claims under this same standard).

Plaintiff also puts forth a race based Hostile Work Environment claim under the NYCHRL. The NYCHRL is expressly "'more protective'" than the NYSHRL. *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 579 (S.D.N.Y. 2011) (quoting *Farrugia v. N. Shore Univ. Hosp.*, 13 Misc.3d 740, 820 N.Y.S.2d 718, 724 (N.Y.Sup.Ct.2006)). Employers may only avoid liability under the NYCHRL for conduct that results in an employee being treated "less well" because of her gender, *Mihalik*, 715 F.3d at 110 (quoting *Williams*, 872 N.Y.S.2d at 39), when the conduct complained of constitutes nothing more than " 'petty slights and trivial inconveniences,'" *id.* at 111 (quoting *Williams*, 872 N.Y.S.2d at 41). Because Plaintiff has adequately pled a claim under the NYSHRL, he has also done so under the NYCHRL. *See Winston v. Verizon Servs. Corp.*, 633 F.Supp.2d 42, 48 (S.D.N.Y.2009) ("if a plaintiff successfully states a claim under the NYSHRL, then '[a] fortiori'

she has stated a claim under the NYCHRL" (alteration in original) (quoting *Brightman v. Prison Health Servs.*, Inc., 62 A.D.3d 472, 878 N.Y.S.2d 357, 358 (2009))).

### D.  Gender Based Hostile Work Environment under NYSHRL and NYCHRL

However, Plaintiff's gender based hostile work environment claim under NYSHRL and NYCHRL must fail. As previously stated, the analysis of gender based claims under Title VII and NYSHRL is generally identical. *See Salamon*, 514 F.3d at 226 n. 9. A plaintiff claiming relief for a hostile work environment in violation of Title VII must allege facts demonstrating that the treatment in question: "(1) 'is objectively severe or pervasive—that is, ... creates an environment that a reasonable person would find hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an environment because of the plaintiff's sex.'" *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir.2007) (quoting *Gregory v. Daly*, 243 F.3d 687, 691–92 (2d Cir.2001)).

The standard for a NYCHRL hostile work environment standard is less stringent. Plaintiff need only demonstrate that "she was treated 'less well' because of her gender." *Mihalik*, 715 F.3d at 110 (quoting *Williams*, 61 A.D.3d at 62). Unlike Title VII, whether a statement or incident is "isolated" is "irrelevant" under the NYCHRL. *Hernandez v Kaisma*n, 103 A.D.3d 106, 957 N.Y.S.2d 53, 59 (N.Y. App. Div. 2012).

Plaintiff's allegations fail under both NYSHRL and NYCHRL as they are wholly conclusory. Plaintiff's lone allegation with regard to gender is that "Ms. Masone dedicated herself to attempting to destroy [Plaintiff's] reputation and sabotaging his effectiveness as the Chief Technologist because of his race and gender." This conclusory allegation is insufficient even under the lenient standard of the NYCHRL. Plaintiff's gender based hostile work environment claims are therefore dismissed.

### E.  Retaliation under 42 U.S.C. Section 1981

Section 1981 encompasses retaliation claims in employment, *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 446 (2008), which are analyzed under the same standard as a Title VII retaliation claim. *Villavicencio v. Gure-Perez*, 56 F. Supp. 3d 178, 186 (E.D.N.Y. 2014) (citing *Little v. N.E. Util. Serv. Co.*, 299 F. App'x 50, 52 (2d Cir. 2008)). To state a retaliation claim, a plaintiff must demonstrate (1) that he engaged in protected activity, (2) of which the employer was aware, and (3) that he suffered a materially adverse action, which (4) was causally connected to the protected activity.

As the Court assessed *supra*, Plaintiff has failed to identify that he suffered any material adverse actions. Thus, this claim necessarily fails and must be dismissed. *See Dhar v. City of New York*, 655 Fed. Appx. 864, 865 (2d Cir. 2016) ("To withstand a motion to dismiss, a plaintiff must identify a protected activity and an adverse employment action and plead facts sufficient to 'give plausible support to a minimal inference of discriminatory motivation' ") (quoting *Littlejohn*, 795 F.3d at 311); *Obi v. Westchester Med. Re'l Physician Servs.*, P.C., No. 19 Civ. 3022, 2020 WL 1434159, at *6 (S.D.N.Y. Mar. 23, 2020) (plaintiff must allege facts sufficient to allow the court to infer the defendant's intent to discriminate on the basis of race); *Sosa v. New York City Dep't of Educ.,* 368 F. Supp. 3d 489, 520 (E.D.N.Y. 2019) (dismissing a retaliation claim where Plaintiff failed to identify a materially adverse employment action sufficient to withstand dismissal). Given that Section 1981 and NYSHRL claims are analyzed according to the same standard, it follows that the Court's conclusion regarding the sufficiency of the 1981 claims would apply to Plaintiff's retaliation claim brought under the state law. *Kim v. Cty. of Nassau,* No. 19 CV 3264, 2020 WL 6149712, at *11 (E.D.N.Y. Oct. 2, 2020), *report and recommendation adopted*, No. 19 CV 3264,

2020 WL 6146881 (E.D.N.Y. Oct. 20, 2020). Accordingly, Plaintiff NYSHRL retaliation claim is dismissed as well.

   As to Plaintiff's NYCHRL claim for retaliation, this claim must also be dismissed. "[T]o prevail on a retaliation claim under the NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination, . . . and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik*, 715 F.3d at 112; *accord Alvarado v. Nordstrom, Inc.,* 685 F. App'x 4, 8 (2d Cir. Mar. 29, 2017) (summary order). "'[O]pposing any practice' can include situations where a person, before the retaliatory conduct occurred, merely made clear her disapproval of the defendant's discrimination by communicating to him, in substance, that she thought his treatment of the victim was wrong." *Mihalik*, 715 F.3d at 112. Moreover, "a defendant is not liable if the plaintiff fails to prove the conduct is caused at least in part by . . . retaliatory motives." *Id.* at 113; *accord Ya-Chen Chen,* 805 F.3d at 76; *Krasner v. City of New York*, 580 F. App'x 1, 3 (2d Cir. Aug. 28, 2014) (summary order). Plaintiff's complaint is devoid of allegations to support a retaliation claim. Plaintiff merely asserts that he experienced retaliation in conclusory terms. *See* Compl. ¶¶ 54, 84, 89 "Montefiore, in fact, permitted Ms. Masone to escalate her harassment, discrimination and retaliation towards Mr. Brown in 2017 because Montefiore treated white men and white women employees more favorably than black male employees;" "Ms. Masone falsely accused Mr. Brown of yelling and screaming at her, and stated that other staff members has witnessed the behavior. These false allegations were part of Ms. Mason's concerted efforts to continue her discrimination, retaliation and harassment of Mr. Brown;" "Specifically, Mr. Brown was left to work in an environment of hostility, discrimination and retaliation." Plaintiff fails to identify any retaliation by Montefiore that has a causal connection to him engaging in a protected activity. Instead, Plaintiff spends much

of the complaint alleging that Masone, his subordinate, retaliated against him, but fails to connect the purported retaliation to any retaliatory motives of Montefiore. The Court therefore dismisses Plaintiff's retaliation claim under the NYCHRL.

### F.  Intentional Infliction of Emotional Distress

Plaintiff also alleges intentional infliction of emotional distress. New York law requires proof of "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Weiping Liu v. Indium Corp. of Am.*, No. 16 CV 1080, 2019 WL 3825511, at *26 (N.D.N.Y. Aug. 15, 2019) (citations and quotations omitted) (citing *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999)).

"Critically, acts which merely constitute harassment, disrespectful or disparate treatment, a hostile environment, humiliating criticism, intimidation, insults or other indignities fail to sustain a claim of infliction of emotional distress because the conduct alleged is not sufficiently outrageous." *Leon v. Dep't of Educ.*, No. 10 CV 2725, 2017 WL 6729676, at *7 (E.D.N.Y. Sept. 29, 2017) (quotations and brackets omitted) (granting summary judgment on intentional infliction of emotional distress claim for failing to meet this "very high bar"), *aff'd*, 740 F. App'x 759 (2d Cir. 2018). Instead, "the conduct must have been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and recovery is available only where severe mental pain or anguish is inflicted through a deliberate and malicious campaign of harassment or intimidation." *Pouncy v. Advanced Focus LLC*, No. 15 Civ. 6260, 2017 WL

4280949, at *7 (S.D.N.Y. Sept. 25, 2017) (quotations omitted) (collecting cases), *aff'd*, 763 F. App'x 134 (2d Cir. 2019). "In the rare instances where the New York courts have found the complaint sufficient to state a claim for intentional infliction of emotional distress in the employment context, the claims have been accompanied by allegations of sex discrimination, and more significantly, battery." *Gerzog v. London Fog Corp.*, 907 F. Supp. 590, 604 (E.D.N.Y. 1995).

Plaintiff alleges Masone used her status as a white woman to parade stereotypes about Plaintiff that has caused him very serious mental distress. See Pl.'s Mem of Law at 31. Even under the most lenient of standards, the complaint is devoid of such 'outrageous conduct,' and such a claim is therefore properly dismissed. *See, e.g.*, *Pouncy*, 2017 WL 4280949, at *7 ("Pouncy's intentional infliction of emotional distress claim rests on the same allegations that support his other claims—for example, that Defendants . . . created a hostile work environment, and retaliated against him—and his conclusory assertion that, as a result of those actions, he suffered mental anguish. But even if there were evidence to substantiate[ ] all of those allegations—and there is not . . .—Pouncy would still not meet the rigorous standards for an intentional infliction of emotional distress claim. Thus, Pouncy's . . . emotional distress claim must be and is dismissed." (citation omitted)), *aff'd*, 763 F. App'x 134 (2d Cir. 2019); *see also Chimarev v. TD Waterhouse Inv'r Servs., Inc.*, 280 F. Supp. 2d 208, 215 (S.D.N.Y. 2003) ("Simply put, being snubbed by co-workers, disciplined by managers in an unpleasant manner, and taunted by peers for ethnic differences are not actionable under the tort of intentional infliction of emotional distress."), *aff'd*, 99 F. App'x 259 (2d Cir. 2004). Accordingly, Plaintiff has failed to allege facts that meet the stringent standard of intentional infliction of emotional distress. Thus, Plaintiff's intentional infliction of emotional distress claim is dismissed.

### G.  Negligent Infliction of Emotional Distress

The Court need not analyze Plaintiff's negligent infliction of emotional distress claim, as Plaintiff appears to have abandoned this claim. Plaintiff states in its conclusion that this Court should deny "Defendant's dismissal motion in its entirety except for the claim of negligent infliction of emotional distress." *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08 CV 442, 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014) ("At the motion to dismiss stage, where review is limited to the pleadings, a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim."); *Martinez v. Sanders*, No. 02 CV 5624, 2004 WL 1234041, at *2–3 (S.D.N.Y. June 3, 2004); *Dineen v. Stramka*, 228 F.Supp.2d 447, 454 (S.D.N.Y. 2002). Accordingly, the Court dismisses Plaintiff's negligent infliction of emotion distress claim.

## CONCLUSION

For the aforementioned reasons, the Court GRANTS in part and DENIES in part Defendant's motion to dismiss. (ECF No. 10.) Specifically, the Court dismisses Counts 1,3, 5, 6, 7, 8, 9, 10, 12,13,14,15. Counts 2, 4, and 11 shall proceed against Defendant.

**SO ORDERED.**

**Dated:**  March 25, 2021
      New York, New York

_____
         **ANDREW L. CARTER, JR.**
         **United States District Judge**