**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**KAREEM BROWN,**

                              **Plaintiff,**

              **-against-**

**MONTEFIORE MEDICAL CENTER,**

                              **Defendant.**

**19-cv-11474 (ALC)**

**OPINION & ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Kareem Brown filed this action against Montefiore Medical Center ("Montefiore"),  alleging racial discrimination, hostile work environment, and retaliation in violation of 42 U.S.C. § 1981 as well as New York State Human Rights Law ("NYSHRL"), Executive Law § 296 et seq. and the Administrative Code of the City of New York ("NYCHRL"), § 8- 101 et seq. Complaint ("Compl."), ECF No. 1, at ¶ 2.

. Defendant filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons that follow, Defendant's motion for summary judgment, ECF No. 78, is hereby **GRANTED.**

**BACKGROUND**

**I.      Statement of Facts**

The following allegations are derived from Plaintiff's complaint, the Parties' 56.1 statements, and documents relied upon therein.

Plaintiff, an African American man, was employed by Montefiore Medical Center for seventeen years. Compl. at ¶ 20. In 2015, Plaintiff was promoted to Chief Technologist in the Radiology Department, which Plaintiff credits as the reason his problems began. *Id.* at 19. As Chief Technologist, Plaintiff supervised over twenty employees, nearly all of whom were

members of 1199SEIU United Healthcare Workers East (hereinafter the "Union"). Def. 56.1 ¶ 5; Ex. G. Plaintiff was not in the Union. Def. 56.1 ¶ 5; Ex. G. One of Plaintiff's subordinates was Laima Masone, an Ultrasound Technologist who Plaintiff alleges harassed and discriminated against him because he was a Black man. Compl. at ¶ 21. Plaintiff's direct reports included eight African-American individuals, three Hispanic individuals, nine Caucasian individuals (including Masone who identified herself as "Albanian"), and two Asian individuals. Def. 56.1 ¶ 5; Ex. C.

Plaintiff alleges that Montefiore's management, human resources, and labor relations, discriminated, retaliated, and harassed Plaintiff by failing to enforce Montefiore's policies and procedures. Compl. at ¶ 22.

## A. Plaintiff's Discipline of Masone

Plaintiff was expected to follow Montefiore's policy of "progressive discipline" when disciplining a Union member, which was first to issue a verbal warning, then written warning, then suspension without pay, and finally dismissal. Def. 56.1 ¶ 9; Ex. F. Plaintiff disciplined Masone on several occasions.

On December 14, 2015, Plaintiff issued Masone a Memorandum to File for being disrespectful towards him when she replied "so what" after Plaintiff told Masone that she should not return late from lunch because patients were waiting. Def. 56.1 ¶ 11, Ex. G.

On April 6, 2016, Plaintiff issued Masone a second Memorandum to File for failure to follow instructions and for being disrespectful towards him when she stated "why do I need to tell you everything" after Plaintiff asked Masone why she failed to tell Plaintiff she was unable to remove radiology images.  Def. 56.1 ¶ 12, Ex. G. On or around May 6, 2016, Plaintiff issued Masone a Verbal Warning for being rude and disrespectful towards Plaintiff when Plaintiff tried to conduct Masone's evaluation because Masone repeatedly stated "I do not need to be here for

this." *Id.*  On June 23, 2016, Plaintiff sent a coaching email to Masone and directed her to change her workplace behavior with respect to how she interacted with her co-worker Matthew Glasheen including instructing Plaintiff not to hang up on Glasheen. *Id.* Matthew Glasheen is Caucasian. *Id.*

On April 27, 2017, Plaintiff issued Masone a third Memorandum to File for not wearing a surgical mask during influenza season and for walking away from him when he was giving her direction. *Id.* at ¶ 13. On June 16, 2017, Plaintiff counseled Masone for not following his direction about permitting patients' children to accompany them to their radiology appointment. *Id.* On October 13, 2017, Plaintiff issued Masone a fourth Memorandum to File for failing to utilize Tech Aides to transport patients and not following Plaintiff's direction in using Tech Aides. *Id.* On October 24, 2017, and October 26, 2017, Plaintiff coached Masone about not following the directions of three doctors, Dr. Cohen, Dr. Fidvi and Dr. Anthony Ruvo. *Id.* Dr. Cohen and Ruvo are both Caucasian. *Id.*

On January 22, 2018, Plaintiff issued Masone a fifth Memorandum to File for failing to send a request for time off to Plaintiff. *Id.* at ¶ 14.  On June 11, 2018 Plaintiff issued Masone a Written Warning for submitting a complaint to a doctor at Montefiore and Emergency Department rather than to him and for making clinical assessments of patients outside her job scope. *Id.*

On or around January 25, 2019, Plaintiff sent Masone to an effective communication class as part of a performance improvement plan. *Id.* at ¶ 15.  In February 2019, Plaintiff suspended Masone. *Id.* Masone grieved her suspension. *Id.* Plaintiff's suspension read:

Violation of MMC's Policy VII01 Medical Center Rules and Regulations – Failure to follow instructions, Rude and Inappropriate Behavior. On 10/11/18, Laima was informed that she was responsible for informing me when supplies were needed. On 11/28/18 & 12/6/18, Laima told Jae Kim upon arriving for work to inform me of the supplies that were needed. On 12/27/18,

Laima was instructed to inform me if her patient was ready for their exam. When asked why she did not inform me, she said twice in front of the patient in the room because you can see in EPIC. On 9/27/18 & 12/31/18, Laima was instructed to inform me whenever she has a concern about another associate. On 1/8/19, Laima sent Jae Kim an email instructing Jae to leave the ultrasound room the way he found it. On 1/4/19, Laima told me you do not need the log book you just need to answer my questions. (Haigh Decl. Ex. G, D000227-28.) 16. After Plaintiff suspended Masone in February 2019 the next discipline, pursuant to Montefiore's progressive discipline policy for union employees, would be termination.

## B. Union Comments About Masone and Montefiore's Response

During Plaintiff's employment, Masone's Union, 1199SEIU United Healthcare Workers East, made two comments to Plaintiff to suggest that Masone held racial animus against him. *Id.* at ¶ 23. First, on April 6, 2016, Masone's Union Representative, Maurice De Palo told Plaintiff that Masone is "a racist," and that Masone told him, during his representation of her, that she liked the hospital better before Montefiore acquired it because "they did not hire people like Kareem [Plaintiff]." *Id.* at ¶ 24. De Palo never told anyone besides Plaintiff about this comment from Masone. *Id.* at ¶ 25. Plaintiff did not report De Palo's comment to anyone at Montefiore until the following year when the Union made a second comment to him about Masone. *Id.* at ¶ 26.

The second comment from the Union occurred on August 17, 2017, when Union's Executive Vice President Estella Vazquez told Plaintiff that the reason he was having issues with Masone was because Masone was not used to having someone of Plaintiff's color as her manager. *Id.* at ¶ 28. Plaintiff did not have any other conversation with Vazquez after this conversation. *Id.* Plaintiff told his supervisor, Melanie Danisi about Vazquez's comment and Danisi instructed Plaintiff to tell Todd Austin in Labor Relations. *Id.* at ¶ 29, Ex. N.

On August 18, 2017, Plaintiff spoke to Austin and told him about the conversation he had with Vazquez the day before. *Id.* at ¶ 30, Ex. O. Later that same day, Austin sent an email to

Plaintiff, which stated "my understanding from our conversation earlier today is that Estella Vazquez had a conversation with you after the grievance meeting yesterday and made a comment that you found offensive." *Id.* Austin asked Plaintiff to provide him with the details of the comment and told Plaintiff he would address Plaintiff's concern with the Union. *Id.* Plaintiff responded to Austin and told him that Vazquez told Plaintiff that Masone's "problem was is (sic) she never saw or had a black man or person with color as a supervisor before." *Id.* at ¶ 31, Ex. O.

Although Plaintiff's email to Austin did not mention the 2016 De Palo comment, Plaintiff testified that during his phone call with Austin he told Austin about the 2016 comment. *Id.* On August 21, 2017, Austin forwarded Plaintiff's email to Vazquez. *Id.* at ¶ 32, Ex. P. In his email to Vazquez, Austin said that Plaintiff had expressed a concern about Masone and how there may be some racial bias toward him that Montefiore was not aware of, and asked Vazquez to review Plaintiff's email and respond. *Id.* On November 15, 2017, Plaintiff sent an email to Austin following up on their August 2017 discussion about the Union comments and Plaintiff asked if Austin had ever received a response from the Union. *Id.* at ¶ 33. Austin told Plaintiff that the Union did not respond, and he did not expect to receive a response. *Id.,* Ex. O.

### C. Plaintiff's Subordinates' Complaints and Montefiore's Response

On June 4, 2018, Masone sent complaints to Montefiore that Plaintiff had been "harassing" her for two years and disciplining her for "frivolous and petty misunderstandings." *Id.* at ¶ 40, Ex. Q. On July 13, 2018, Masone submitted another complaint on Montefiore's online complaint platform, Ethics Point. *Id.* at ¶ 41. On September 18, 2018, John O'Donnell, one of Plaintiff's subordinates, submitted a complaint alleging that Plaintiff was mistreating several employees and creating a "hostile, unproductive and fearful work environment." *Id.* at ¶ 42, Ex. RR. Plaintiff believes O'Donnell's relevance to his claims is that "Laima [Masone]

started to recruit John [O'Donnell], I guess for support" and because O'Donnell filed a complaint about Plaintiff. *Id.* at ¶ 43. On September 29, 2018, Bohong Wen, one of Plaintiff's subordinates, submitted a complaint about Plaintiff on Ethics Point. *Id.* at ¶ 44, Ex. Q. Plaintiff believes Masone also "recruited" Bohong Wen to plot against him. *Id.* at ¶ 45. On December 28, 2018, Masone sent an email to Montefiore Human Resources complaining about Plaintiff's poor management and stated that Plaintiff and her co-worker Matthew Glasheen were "working on isolating me from everybody." *Id.* at ¶ 46, Ex. Q.

On January 7, 2019, Masone complained that Plaintiff's discipline of her because of her dispute with her co-worker, Jae Kim, showed Plaintiff's "bias management." *Id.* at ¶ 47, Ex. Q. Plaintiff admits he disciplined Masone more than any other employee in his department. *Id.* at ¶ 48. Georgia Colquhoun-Pryce, Senior Employee and Labor Relations Manager, investigated the complaints from Masone, which mentioned discrimination, harassment and retaliation and intimidation related to Plaintiff's management. *Id.* at ¶ 50. When Colquhoun-Pryce interviewed Masone, Masone said she felt Plaintiff treated her differently because she is a white woman and because of where she came from (Albania). *Id.* at ¶ 51. Colquhoun-Pryce also investigated a complaint from John O'Donnell about Plaintiff. *Id.* at ¶ 52. Colquhoun-Pryce attempted to meet with O'Donnell as part of her investigation, but he did not respond to her requests to meet. *Id.*

Colquhoun-Pryce interviewed Teresa Mandarino, Senior Director of Ambulatory Services, as part of her investigation. *Id.* at ¶ 53. Mandarino told Colquhoun-Pryce that Plaintiff was not aggressive or speaking down to Masone during the times Mandarino was present for their interactions, and that Masone behaved the same way towards her previous manager Coyne as she did towards Plaintiff. *Id.* Mandarino testified at her deposition that Masone was "disrespectful to most people in authority, including me." *Id.* at ¶ 54. Mandarino recalls one

occasion when she walked through the department, and it was flu season and she asked Masone to put on her mask and Masone ignored her and walked away. *Id.* Mandarino also recalls Masone being rude to physicians and physician assistants and often questioned their diagnosis. *Id.* Mandarino never witnessed Masone make any "bigoted" comments about Plaintiff. *Id.*

Colquhoun-Pryce met with Plaintiff as part of her investigation, where Plaintiff denied the allegations made by Masone, O'Donnell and Wen, and voiced concerns about the status of his own investigation. *Id.* at ¶ 55. In response, Colquhoun-Pryce told Plaintiff that Michelle Emmons would investigate his concerns about his subordinates. *Id.* at ¶ 56.  In late January 2019, when Colquhoun-Pryce concluded her investigation, she met with Masone and told her that she was not able to substantiate Masone's complaints. *Id.* at ¶ 57. Colquhoun-Pryce did not determine that Ms. Masone made a false complaint about Plaintiff, but rather that Masone's perception was wrong and Masone needed coaching so she could understand that Plaintiff was following policy when he disciplined her and was not treating her unfairly. *Id.* at ¶ 58. Colquhoun-Pryce did not recommend any discipline or action as a result of her investigation into the complaints from Plaintiff's subordinates about Plaintiff. *Id.* at ¶ 61. Plaintiff's supervisor, Bradley Clemente, understood that none of the accusations from Masone about Plaintiff were substantiated. *Id.* at ¶ 62.

**D.  Plaintiff's 2019 Complaints About Masone and Montefiore's Response**

Michelle Emmons, a Senior Director for Human Resources at Montefiore, visited Plaintiff's location and spoke with Plaintiff's subordinates in order to engage in a climate survey due to the number of complaints within Plaintiff's department, including from Plaintiff himself. *Id.* at ¶ 67-68. On or around February 14, 2019, Emmons told Colquhoun-Pryce that she was going to visit Plaintiff's department again the following week and planned to close out her investigation of

Plaintiff's complaints after that. *Id.* at ¶ 73. Emmons concluded that she had no reason to believe that Masone harbored racist attitudes towards Plaintiff because he was African American. *Id.* at ¶ 74.

On March 29, 2019, Plaintiff spoke with De Palo, the Union Representative who had made the comment to Plaintiff in 2016 about Masone, and secretly recorded the conversation. *Id.* at ¶ 77, Ex. S. During the conversation with De Palo, Plaintiff complained that Masone "was trying to say reverse racism" against him. De Palo told Plaintiff that he would tell Michelle Emmons "everything" but that he is afraid. Plaintiff told De Palo he understood that De Palo represents the Union and Union Members. *Id.* at ¶ 78. On April 9, 2019, Plaintiff had a conversation with Emmons which he secretly recorded. *Id.* at ¶ 74, Ex. T. During the conversation, Emmons told Plaintiff that she met with O'Donnell and the Union and O'Donnell apologized and wants to work with Plaintiff. *Id.* Emmons advised Plaintiff that Masone is the issue in the workplace and that Plaintiff should let her be a "loaner." *Id.* Emmons told Plaintiff to be careful when dealing with Masone because Masone had a very negative opinion of Plaintiff and wanted him out and Emmons recommended Plaintiff have a witness when disciplining Masone. *Id.*

On April 11, 2019, Plaintiff had a conversation with Clemente which he secretly recorded. *Id.* at ¶ 80, Ex. U. Plaintiff told Clemente that Emmons had met with Masone with the Union present two weeks earlier and that Emmons had told Masone that "she just needs to respect me [Plaintiff] as her manager, that I am her manager, and I am not going anywhere." Emmons also told Masone that she does not have to "like" Plaintiff but must respect him. *Id.*

On April 29, 2019, Plaintiff met with Clemente and secretly recorded their conversation. Plaintiff told Clemente that Masone only needed one more discipline and Plaintiff could terminate her employment. *Id.* at ¶ 81, Ex. V. Emmons stated that there is nothing that can be

done about Masone except follow progressive discipline and "hold her accountable." Emmons

advised Plaintiff to stop responding to Masone and stop going back and forth with her over email

and simply document when Masone is rude to support a termination decision. *Id.*

### E.  Plaintiff's Resignation and Masone's Termination

On July 3, 2019, Plaintiff took vacation days and then time off. Plaintiff never returned to his

employment at Montefiore after July 3, 2019, and eventually resigned on September 18, 2019.

*Id.* at ¶ 92, 100, Ex. AA.

On September 12, 2019, Dr. Robert Sable, reported that Masone had been insubordinate

and contradicted his medical advice to a patient. *Id.* at ¶ 101, Ex. BB. Josè Martinez, the

supervisor who took over Plaintiff's duties after Plaintiff resigned, made the decision to

terminate Masone. *Id.* at ¶ 101-104.

## PROCEDURAL HISTORY

On December 16, 2019, Brown filed his Complaint alleging racial discrimination, hostile

work environment, and retaliation in violation of 42 U.S.C. § 1981 as well as NYSHRL and

NYCHRL. ECF No. 1, at ¶ 2. On February 12, 2020, Montefiore subsequently moved to dismiss

the complaint, and on March 25, 2021, the court granted the motion in part and denied it in part.

*Brown v. Montefiore Medical Center*, No. 19-CV-11474 (ALC) (JLC), 2021 WL 1163797, at *5

(S.D.N.Y. Mar. 25, 2021). Specifically, the Court dismissed all of Brown's claims except for the

hostile work environment claims under Section 1981, NYSHRL, and NYCHRL. *Id.* at *12.  On

February 9, 2022, Magistrate Judge Cott denied Plaintiff's motion to amend his complaint.  ECF

No. 32. Defendant filed its motion for summary judgment on June 30, 2023. ECF No. 78.

Plaintiff filed his opposition brief on August 25, 2023.  ECF No. 84.  Defendant filed its reply

brief on September 18, 2023.  ECF No. 86. The Court considers the motion fully briefed.

**STANDARD OF REVIEW**

**I.      Summary Judgment Standard**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). There is no issue of material fact where the facts are irrelevant to the disposition of the matter.  Speculation, conclusory allegations and mere denials are not enough to raise genuine issues of fact.  *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Walton Ins. Ltd.*, 696 F. Supp. 897, 900 (S.D.N.Y. 1988). To avoid summary judgment, a party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In deciding a summary judgment motion, courts must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Niagara Mohawk Power Corp. v. Jones Chemical Inc.*, 315 F.3d 171, 175 (2d Cir. 2003). Courts may not assess credibility, nor may they decide between conflicting versions of events because those matters are reserved for the jury. *Jeffreys v. City of New York*, 426 F.3d 549, 553-54 (2d Cir. 2005). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* (quoting *Anderson*, 477 U.S. at 252). At summary judgment, the moving party has the burden "to demonstrate that no genuine issue respecting any material fact exists." *Gallo v. Prudential Residential Servs., Ltd. P'Ship*, 22 F.3d 1219, 1223 (2d Cir. 1994).

**II.     Hostile Work Environment Standard**

Summary judgment may be proper even in workplace discrimination cases, which tend to be very fact-intensive, because "the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to other areas of litigation." *Caban v. City of New York*, No. 11 Civ. 3417 (SAS), 2012 WL 5992088, at *2 (S.D.N.Y. Nov. 30, 2012) (quoting *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985)).  Courts must distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture as even in the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment.  *Caban*, 2012 WL 5992088, at *2 (quoting *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 448 (2d Cir. 1999); *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997).

"[T]o survive summary judgment on a claim of hostile work environment harassment, a plaintiff must produce evidence that 'the workplace is permeated with "discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment.'" *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)), *superseded on other grounds by*, N.Y.C. Local L. No. 85. *See also Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 n.4 (2d Cir. 2014) ("The same standards apply to the plaintiffs' hostile [work] environment claims arising under the NYSHRL and to their claims arising under 42 U.S.C. § 1981." (internal citations omitted)).  The Court may consider five non-exclusive factors in determining the existence of a hostile work environment: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating, or a 'mere offensive utterance'; (4) whether the conduct unreasonably

11

interfered with plaintiff's work; and (5) what psychological harm, if any, resulted." *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 82 (2d Cir. 2009) (quoting *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 437 (2d Cir. 1999), *abrogated on other grounds, Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006)). "Our case law treats the first two of these factors—the frequency and the severity of the misconduct—as the principal focus of the analysis; the last three factors are specific considerations within the severity inquiry. Core hostile work environment cases involve misconduct that is both frequent and severe, for example, when a supervisor utters blatant racial epithets on a regular if not constant basis and behaves in a physically threatening manner." *Id.* (internal quotation marks and citation omitted).

The Second Circuit has explained that an employer's motion for summary judgment must be denied "if the conduct there is *either* so severe *or* so pervasive as to alter the working conditions of a reasonable employee." *Richardson*, 180 F.3d at 440. In addition, although "[i]solated incidents usually will not suffice to establish a hostile work environment, . . . we have often noted that even a single episode of harassment can establish a hostile work environment if the incident is sufficiently severe." *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 175-76 (2d Cir. 2012) (internal quotation marks and citations omitted). *See also Rasmy v. Marriott Int'l, Inc.*, 952 F.3d 379, 388 (2d Cir. 2020) ("Our case law is clear that when the same individuals engage in some harassment that is explicitly discriminatory and some that is not, the entire course of conduct is relevant to a hostile work environment claim.").

"This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Raspardo v.*

*Carlone*, 770 F.3d 97, 114 (2d Cir. 2014).  A plaintiff must also establish that the defendant created the hostile work environment "because" of the plaintiff's race, color, religion, sex, or national origin. *Bell v. McRoberts Protective Agency, Inc.*, No. 15 Civ. 963 (JPO), 2016 U.S. Dist. LEXIS 171466, 2016 WL 7192083, at *3-4 (S.D.N.Y. Dec. 12, 2016).

A plaintiff alleging a hostile work environment must bring forth more than a mere scintilla of evidence to survive a motion for summary judgment. The NYSHRL and the NYCHRL have a similar lower standard for showing hostile work environment. *See Mondelo v.Quinn, Emanuel, Urquhart & Sullivan, LLP*, No. 21-CV-02512 (CM), 2022 WL 524551, at *9 (S.D.N.Y. Feb. 22, 2022). Under the NYCHRL, "[t]o prevail on liability, the plaintiff need only show differential treatment—that []he is treated 'less well'—because of a discriminatory intent. *Mihalik*, 715 F.3d at 110.

## DISCUSSION

### I.    Plaintiff's Hostile Work Environment Claims Under Section 1981 and NYSHRL Must Be Dismissed.

Section 1981 states that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). "This section thus outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment . . . ." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 224 (2d Cir. 2004); *see also Whidbee*, 223 F.3d at 69 ("Section 1981 provides a cause of action for race-based employment discrimination based on a hostile work environment."). The NYSHRL makes it unlawful for an employer to discriminate on the basis of "race, creed, color, [or] national origin." *See* N.Y. Exec. Law § 296. Hostile work environment claims under the NYSHRL are "governed by the same standards" as claims under federal law. *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir. 2006).

Courts are "cautioned to consider the totality of the circumstances, and to evaluate the 'quantity, frequency, and severity' of the incidents," and must consider those factors "'cumulatively,' so that we may 'obtain a realistic view of the work environment.'" *Williams v. New York City Hous. Auth*., 61 F.4th 55, 60 (2d Cir. 2023) (internal citations omitted). When considering the totality of the circumstances and drawing all inferences in Plaintiff's favor, there are no genuine issues of material fact such that a reasonable jury could infer discrimination from either Masone or Montefiore's conduct. *Rasmy v. Marriott Int'l Inc*., 952 F.3d 379, 388.

Plaintiff's hostile work environment claim hinges on evidence that Masone subjected him to a racially discriminatory and pervasively hostile work environment involving every aspect of her dealings with him: her verbal and non-verbal conduct, her written communications, her complaints about him to management, and her recruiting other employees to complain about him to management. While there exists sufficient evidence to conclude that Masone's conduct was pervasively hostile, rude, and insubordinate, Plaintiff points to no *admissible* evidence that would allow a reasonable jury to conclude that Masone's insubordination was motivated by racial animus.

In assessing motions for summary judgment, courts may consider only evidence that would be admissible at trial. *See* Fed. R. Civ. P. 56(c)(1)(B), (2). "Because a party 'cannot rely on inadmissible hearsay' in support of or in opposition to a motion for summary judgment, 'the Court must, as a preliminary matter, determine the likely admissibility of the hearsay evidence' offered by" a party. *Wilkinson v. Nord Anglia Educ. Ltd.*, No. 17 Civ. 7421 (PAE), 2019 U.S. Dist. LEXIS 126863, 2019 WL 3430662, at *2 n.3 (S.D.N.Y. July 30, 2019) (internal citations omitted). Similarly, inadmissible hearsay is insufficient to create a genuine issue of fact, "absent

a showing that admissible evidence will be available at trial." *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 924 (2d Cir. 1985) (citations omitted).

Here, Plaintiff alleges that two comments he heard from representatives of Masone's Union, 1199SEIU, evidenced that Masone's harassment was motivated by racial animus. (Def. 56.1 ¶¶ 23-36).  In April 2016, Masone's Union Representative Maurice De Palo told Plaintiff that he thought Masone was "racist" because Masone allegedly told him she liked the hospital better before Montefiore took over because they did not hire people like Plaintiff. (Def. 56.1 ¶ 24).  In 2017, Union Vice President Estella Vazquez allegedly told Plaintiff in private that she believed the reason Plaintiff was having issues with Masone was because Masone was "not used to having someone of your color as her manager." (Def. 56.1 ¶ 28).

De Palo's 2016 comment is hearsay that would be inadmissible at trial. *See Tolbert v. Smith*, 790 F.3d 427, 437 (2d Cir. 2015) (affirming summary judgment of hostile work environment claim where the evidence cited by plaintiff, which included a declarant's inadmissible hearsay statement that someone else informed them that Defendant was racist, did not raise an inference of discrimination); *see also Finnegan v. Bd. of Educ.*, 30 F.3d 273, 274 (2d Cir. 1994) (per curiam) (explaining that "double hearsay" cannot "create a genuine issue to be tried"); *see also* Fed. R. Civ. P. 56(c)(2). In addition, Vazquez's 2017 comment is a third-party out-of-court opinion that cannot be used to prove Masone's purported animus. *See Aulicino*, 580 F.3d 73 (asking for clarification regarding the district court's consideration of inadmissible third-party statements as evidence of hostile work environment); *see Saraf v. West Publ'g Corp.*, No. 16-CV-1425 (VSB), 2018 WL 7107266, at *12 (S.D.N.Y. Dec. 20, 2018) (out-of-court statements from third parties are "almost certainly hearsay and thus inadmissible for the truth of the

statements" and as such, "they are insufficient to establish an inference of discriminatory animus against [p]laintiff.").

Even assuming the truth, relevance, and admissibility of the Union representatives' statements, Plaintiff still cannot identify a question of fact regarding his hostile work environment claims nor can he demonstrate that Masone's insubordination was *because of* his race. While "the incidents comprising a hostile work environment claim need not make reference to any trait or condition on the basis of which the discrimination has occurred" they must occur under circumstances in which "the incidents can reasonably be interpreted as having taken place on the basis of that trait or condition." *Svenningsen v. Coll. of Staten Island*, No. 01-CV-7550, 2003 U.S. Dist. LEXIS 25816, at *2 (E.D.N.Y. Mar. 28, 2003) (citing *Gregory v. Daly*, 243 F.3d 687, 694—95 (2d Cir. 2001)). "Everyone can be characterized by . . . race . . . and many bosses are harsh, unjust, and rude. It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination." *Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002). Facially neutral incidents may be sufficient to establish a hostile work environment claim "so long as a reasonable fact finder could conclude that they were, in fact, based on [race]. But this requires some circumstantial or other basis for inferring that incidents [race]-neutral on their face were in fact discriminatory." *Id.* at 378.

Plaintiff alleges that Masone and O'Donnell falsely accused him of reverse racism, and Plaintiff alleges pattern of behavior that may have contributed to a hostile work environment. Standing alone, these allegations do not suggest racially motivated harassment. Even when coupled with allegations that two Union representatives informed Plaintiff that the reason for Masone's behavior was because of racial antipathy, these facts do not rise to the level of severe

or pervasive discriminatory intimidation, ridicule, and insult necessary to prove a prima facie case of a hostile work environment claim. That Plaintiff's Caucasian supervisors (Danisi, Clemente, Mandarino) agreed that Masone was "insubordinate;" "was more difficult to manage than any other employee;" and that they were involved in "more disciplinary matters involving Masone than any other employee" casts doubt on the inference that Masone's behavior was because of Plaintiff's membership in a protected class. Moreover, Masone's termination after being insubordinate to Dr. Robert Sable (a Caucasian doctor) and contradicting his medical advice to a patient further demonstrates her unwillingness to follow orders, irrespective of race. (Def. 56.1 ¶ 101-104).  *Cornelius v. Walmart*, No. 21-CV-511JLS(F), 2022 U.S. Dist. LEXIS 129108, at *30 (W.D.N.Y. July 20, 2022) (recommending dismissal of complaint where Plaintiff's vague reference to being "spoken to in an abrasive manner by subordinates and management," failed to connect any abrasive statements to Plaintiff's membership in a protected class as required), dismissed in part, 2023 U.S. Dist. LEXIS 2605 (W.D.N.Y. Jan. 6, 2023).

Assuming, *arguendo*, that Plaintiff has established that Masone possessed racial animus, Plaintiff's claim still fails because he cannot establish that Masone's discriminatory misbehavior was severe or pervasive. *See Fleming v. MaxMara USA, Inc.*, 371 Fed. Appx. 115, 119 (2d Cir. 2010) (concluding that no hostile work environment existed even though "defendants wrongly excluded [the plaintiff] from meetings, excessively criticized her work, refused to answer work-related questions, arbitrarily imposed duties outside of her responsibilities, threw books, and sent rude emails to her"); *Davis-Molinia v. Port Auth. of N.Y. & N.J.*, 2011 U.S. Dist. LEXIS 93868, 2011 WL 4000997, at *11 (S.D.N.Y. Aug. 19, 2011) (finding "diminished [job] responsibilities," "exclu[sion] from staff meetings," deliberate "avoid[ance]," "yell[ing] and talk[ing] down to," and an increased workload of menial tasks, among other factors, was not enough to show that

defendants' conduct was sufficiently severe or pervasive), *aff'd*, 488 Fed. Appx. 530 (2d Cir. 2012).

II.    **Plaintiff's Hostile Work Environment Claim Under NYCHRL Must Be Dismissed.**

"To establish a ... discrimination claim under the NYCHRL, the plaintiff need only demonstrate 'by a preponderance of the evidence that [he] has been treated less well than other employees because of [a protected characteristic].'" *Mihalik v. Credit Agricole Cheuvreux N. Am.*, Inc., 715 F.3d 102, 109 (2d Cir. 2013).  As described above, Plaintiff has not provided sufficient evidence of Masone's racial animus nor has he shown that he was treated "less well" by Defendant due to discriminatory intent. *Id.* at 110. Plaintiff's complaint that his subordinate was challenging, rude, and insubordinate, are simply not actionable under NYCHRL. *Wilson v. N.Y.P. Holdings, Inc*., No. 05-CV-10355, 2009 WL 873206, at *29 (S.D.N.Y. Mar. 31, 2009) (dismissing hostile work environment claim under the NYCHRL because although the conduct alleged was "offensive," "no reasonable fact finder could conclude that the alleged conduct amounts to more than such petty slights and inconveniences"), aff'd sub nom. *Watson v. N.Y. Pressman's Union No. 2*, 444 F. App'x 500 (2d Cir. 2011).

**CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment, ECF No. 78, is hereby **GRANTED**. Plaintiff's request for oral argument is **DENIED** as moot**.** Plaintiff's Complaint is **DISMISSED** with prejudice pursuant to Fed. R. Civ. P. 56. The Clerk of the Court is respectfully directed to close the open motions at ECF No. 78 and 82.

**SO ORDERED.**

**Dated: March 30, 2024**
**New York, New York**

_____
**HON. ANDREW L. CARTER, JR.**
**United States District Judge**